The **PEOPLE of the State of Colorado,**
Plaintiff–Appellant

v.

Erica **KERST, Defendant–Appellee.**

No. 07SA239.

Supreme Court of Colorado,
En Banc.

April 28, 2008.

Robert E. Watson, District Attorney, 13th Judicial District, Brittny B. Lewton, Chief Deputy District Attorney, Wray, Colorado, Attorneys for Plaintiff–Appellant.

Robert E. Ray, John J. Briggs, Greeley, Colorado, Attorneys for Defendant–Appellee.

Justice EID delivered the Opinion of the Court.

In this interlocutory appeal, the People challenge the trial court's order suppressing evidence of counterfeit money taken from the home of the defendant, Erica Kerst, during the execution of a search warrant. The trial court found that the police officer who submitted an affidavit in support of a search warrant omitted facts with a reckless disregard for the truth. In addition, the trial court found that had the omitted facts been included, the affidavit would not have established probable cause for a search. Based on these findings, the trial court suppressed the evidence taken from Kerst's home.

We now reverse. We hold that regardless of whether the facts were omitted with a reckless disregard for the truth, the information was not material such that its omission rendered the affidavit substantially misleading as to the existence of probable cause. Thus, we find that the trial court improperly suppressed the evidence.

## I.

From January 1 to 5, 2007, a number of businesses in Yuma, Colorado, reported that counterfeit cash had been used at their establishments. On January 9, Chief Michael Fields of the Yuma Police Department sought a search warrant from the Yuma County District Court in order to search the home of Erica Kerst [1] for evidence of forgery instruments, counterfeit money, and links to other individuals who may have had knowledge of counterfeiting. In the affidavit supporting the search warrant, Fields stated the

---

**1.** The defendant is alternatively referred to in the record as "Erica Kerst," her married name, or "Erica Noffsinger," her maiden name. We refer to her herein as "Kerst."

following facts that served as the basis for his belief that such evidence would be found in Kerst's home: On January 1, Officer Robby Furrow investigated the use of two counterfeit $10 bills with the same serial number at Subway. The Subway employee described the person that used the bills as a short, stocky, red-headed female that came in about once a week—a description that matches Kerst. On January 2, Fields received a complaint that two counterfeit bills had been used to purchase items at ACE Quality Farm and Ranch. The store's employee gave Kerst's name as the person using the money, stating that Kerst had an account with the store. On that same day, Bank of Colorado reported having received cash deposits from Ampride Gas Station that contained counterfeit money. One of the counterfeit bills in Ampride's cash deposits contained the same serial number as one of the bills reported that same day by ACE Quality Farm and Ranch.

The affidavit further states, "On January 3rd, 2007, Officer Furrow visited with Erica Noffsinger regarding counterfeit bills. She let Officer Furrow inspect the cash in her possession and he confiscated two counterfeit bills...." One of these two bills contained the same serial number as the two counterfeit bills used at Subway on January 1. The other bill contained the same serial number as one of the bills used at ACE Quality Farm and Ranch on January 2.

The affidavit also states that on January 4, Fields called Kerst and asked her to speak with him at the police station. Kerst came during her lunch break, and she permitted Fields to examine the money she had with her. He found three more counterfeit bills in her possession. Kerst told him that she did not know how she had obtained the counterfeit money. She provided him with a list of businesses that she had recently visited. The list included five businesses that had reported counterfeit money since January 1.

Based on this affidavit, a judge from the Yuma County District Court issued the search warrant. When the police arrived at Kerst's house on January 10 to execute the warrant, she attempted to hide a black zippered bag. Within that bag, the police found a number of counterfeit bills. Some of these bills contained serial numbers that matched the serial numbers on bills used at Subway, ACE Quality Farm and Ranch, and Ampride a few days earlier and on bills found in Kerst's possession on January 3. Kerst was subsequently arrested and charged with three counts of forgery[2] in violation of section 18–5–102(1)(a), C.R.S. (2007), and three counts of possession of a forged instrument in violation of section 18–5–105, C.R.S. (2007).[3]

Kerst moved to suppress the evidence obtained during the search of her home on the grounds that the search warrant was invalid. Specifically, she argued that the affidavit supporting the warrant contained false and misleading statements and omissions, and that without these misrepresentations and omissions, there was insufficient probable cause for the warrant. She requested that the trial court hold a veracity hearing pursuant to *People v. Dailey*, 639 P.2d 1068 (Colo. 1982), in which the accuracy of the affidavit could be contested.

In her affidavit supporting her motion to suppress, Kerst provided the following additional facts: On January 2, she purchased some items from ACE Quality Farm and Ranch, gave the store her name and account, and returned later that day to pick up the items. When she returned, an employee informed her that some of the bills she had used to purchase the items were counterfeit. Because Kerst conducted her business "predominantly in cash" and had a considerable amount of cash at home, she brought $1,300 in cash with her to the Yuma Police Department and asked Furrow, the officer on duty,

2. The three counts of forgery were based on Kerst's alleged use of counterfeit money at ACE Quality Farm and Ranch, Ampride, and Alco Discount Store.

3. Kerst was also originally charged with one count of possession with intent to distribute a Schedule II controlled substance, but the trial court dismissed that claim for lack of probable cause. Additionally, Kerst was originally charged with one count of possession of a Schedule II controlled substance, but the People dismissed that claim based on results received from the Colorado Bureau of Investigation.

to determine whether the bills were counterfeit. She called the department several times for follow-up before Fields contacted her for a meeting on January 4. During that meeting on January 4, she gave Fields a list of places where she had recently obtained cash and another list of places where she had recently spent cash.

Kerst contended that the affidavit's statement that "Officer Furrow visited with Erica Noffsinger regarding counterfeit bills" was misleading because it omitted the fact that Kerst, not the police, initiated the meeting. Further, the affidavit did not mention that Kerst called the department for follow-up several times. The affidavit also neglected to state that in the first meeting, Kerst brought $1,300 for examination, in which only two counterfeit bills were discovered. Kerst asserted that had the issuing court been given this complete set of facts, it would have concluded that Kerst gave "complete participation and cooperation in the process and . . . came to the police for assistance in the first place." Thus, she argued, the court would likely not have issued the search warrant, due to insufficient probable cause.

At the veracity hearing held on July 13, 2007, Fields testified that when he writes an affidavit for a search warrant, he tries "to list as much as [he] can," but that "[i]t's a summary of events" and should not be "too wordy." He further testified that at the time he wrote the affidavit, he did not know that Kerst, rather than the police, had initiated the first meeting, or how much money Kerst had brought in for examination during that meeting. However, Fields' fellow officer, Furrow, testified at the same hearing that on or about the date of his first meeting with Kerst, he had told Fields that Kerst had come in on her own with a large amount of cash and had asked Furrow to examine it, and that Furrow had found two counterfeit bills within that stash. Furrow testified that during their meeting, Kerst told him that she had obtained the counterfeit cash from ATMs.

The trial court granted the motion to suppress all evidence seized as a result of the search. It found that Kerst had contacted the police after a store informed her that she had used a counterfeit bill there. Further, the court stated:

> In his affidavit for search warrant it is incredible that Officer Fields did not know that his fellow officer, Officer Furrow, had first talked to the defendant concerning counterfeit bills and that the defendant had brought approximately $1,300 in cash to the police for them to examine to make certain that her money was not bogus— *but only after* the defendant had first contacted the Yuma police department when she was concerned about the money that she had in her possession. The Fields Affidavit showed a reckless disregard for the truth when it failed to disclose that the defendant had first contacted the Yuma police department concerning bills which she had in her possession. . . .

(Emphasis in original.) In determining that the warrant was not supported by sufficient probable cause, the court found that:

> Based solely upon the information contained within the Fields Affidavit, the original search warrant was lawfully issued. However, had Officer Fields advised the issuing judge of all of the known and relevant facts surrounding this matter, the affidavit's remaining content would be insufficient to establish probable cause—and the search warrant would not have been issued.

The People then filed this interlocutory appeal, pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2007).

## II.

The People contend that the evidence of counterfeit money taken from Kerst's home should not be suppressed. We agree, and reverse the trial court's holding to the contrary. We consider the trial court's conclusion that the police officer who submitted an affidavit in support of a search warrant omitted facts with a reckless disregard for the truth, and the court's further conclusion that if the omitted facts had been included, the affidavit would not have established probable cause for a search. We hold that regardless of whether the facts were omitted with a reckless disregard for the truth, the information was not material such that its omission

rendered the affidavit substantially misleading as to the existence of probable cause. Thus, we reverse the trial court's order of suppression.

Both the United States and Colorado constitutions provide that a search warrant may only be issued upon a showing of probable cause, supported by oath or affirmation, particularly describing the place to be searched and the things to be seized. U.S. Const. amend. IV; Colo. Const. art. II, § 7. A warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation. *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). There is a presumption of validity afforded to the affidavit submitted in support of the search warrant. *Id.* at 171, 98 S.Ct. 2674. Thus, the defendant must show some "good faith basis in fact" to obtain a veracity hearing testing the truth of statements contained in a warrant affidavit. *Dailey*, 639 P.2d at 1074–75. Specifically, a motion to suppress evidence must be supported by one or more affidavits reflecting a good faith basis for the challenge and must identify the precise statements in the warrant affidavit that are being challenged. *Id.* at 1075.

In this case, the trial court found that various facts had been omitted from Fields' affidavit.[4] There is no requirement that a warrant affidavit fully describe all steps taken, all information obtained, and all statements made by witnesses during the course of an investigation. *People v. Fortune*, 930 P.2d 1341, 1345 (Colo.1997). Instead, "an affiant's duty of disclosure extends only to material or relevant adverse facts." *People v. Sundermeyer*, 769 P.2d 499, 501 (Colo.1989) (citation and internal quotation marks omitted); *see also People v. Wilson*,

819 P.2d 510, 514 (Colo.App.1991). A fact is material for the purposes of vitiating an entire affidavit only if its omission rendered the affidavit "substantially misleading" as to the existence of probable cause to the magistrate who issued the warrant. *People v. Winden*, 689 P.2d 578, 583 (Colo.1984); *see also Sundermeyer*, 769 P.2d at 501; *People v. Unruh*, 713 P.2d 370, 381 (Colo.1986). The omission of material facts known to the affiant at the time the warrant affidavit was executed may cause the affidavit to be so misleading that a finding of probable cause based on such statements may be deemed erroneous. *Winden*, 689 P.2d at 583. In sum, although information omitted from the affidavit may be adverse and relevant, its omission does not rise to the level of misrepresentation if it does not cast doubt on the existence of probable cause. *Sundermeyer*, 769 P.2d at 501; *Wilson*, 819 P.2d at 514.

In this case, Kerst contends, and the trial court found, that Fields' omission of certain facts regarding Kerst's cooperation made the affidavit substantially misleading as to the existence of probable cause. First, Kerst argues that the affidavit's statement that "Officer Furrow visited with Erica Noffsinger regarding counterfeit bills" was misleading because it omitted the fact that Kerst, not the police, initiated the meeting. Second, the affidavit did not mention that Kerst called the department for follow-up several times. Third, Kerst points to the affidavit's failure to state that in the first meeting, she brought $1,300 for examination, in which only two counterfeit bills were discovered. As a result, in Kerst's view, the affidavit was substantially misleading to the reviewing magistrate, and the omissions made his finding of probable cause erroneous.

---

4. A claim of material omission is analyzed somewhat differently from cases involving claims of false statements. In *Dailey*, we set forth three issues to be addressed in a veracity hearing when the defendant claims that false statements were made in an affidavit: (1) whether the affidavit contains false statements; (2) whether the false statements must be excised from the affidavit; and (3) if the statements are excised, whether the remaining statements establish probable cause to authorize the search. *People v. Reed*, 56 P.3d 96, 99 (Colo.2002) (citing *Dailey*, 639 P.2d at 1075). False statements must be excised if the defendant can show by a preponderance of the evidence that the error resulted from the affiant's intentional falsehood or reckless disregard for the truth. *Dailey*, 639 P.2d at 1076. However, if the error resulted from some other source, such as negligence or a good-faith mistake, the question of appropriate sanctions, if any, is initially left to the discretion of the trial court and is subject to our subsequent review. *Reed*, 56 P.3d at 99.

We assume, without deciding, that Kerst's alleged facts were true and were known to Fields at the time he executed the affidavit, and that he chose not to include those facts in the affidavit. We disagree, however, that the information was material such that its omission rendered the affidavit substantially misleading as to the existence of probable cause. Even if Fields had included the information about Kerst's cooperation in the affidavit, probable cause to search Kerst's home would have existed.

 An affidavit establishes probable cause if it contains sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *Unruh,* 713 P.2d at 381. In determining whether probable cause exists, the magistrate must look at the totality of the circumstances and "make a practical, common-sense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime." *People v. Altman,* 960 P.2d 1164, 1167 (Colo.1998); *see also People v. Dunkin,* 888 P.2d 305, 308–09 (Colo.App.1994). The affidavit must supply a sufficient nexus between criminal activity, the things to be seized, and the place to be searched. *People v. Kazmierski,* 25 P.3d 1207, 1211 (Colo.2001). This link between suspected criminal activity and a particular place can be established by circumstantial evidence and proper inferences drawn from that evidence. *People v. Reed,* 56 P.3d 96, 102 (Colo.2002) (citation omitted). Due consideration should be given to a law enforcement officer's experience and training in determining the significance of the observations set forth in the affidavit. *Dunkin,* 888 P.2d at 309.

In this case, the trial court found that the content of the affidavit presented to the magistrate established probable cause to search Kerst's home. However, the court found that had the details of Kerst's cooperation been included in the affidavit, probable cause would not have existed. We disagree. Even with the additional facts included, there was a "fair probability" that evidence of counterfeit money would be found in Kerst's home.

No party disputes that Kerst was in possession of and used counterfeit money on multiple occasions. She was connected to the use of counterfeit bills at Subway through the description given by the store's employee. Further, she was linked to passing counterfeit bills at ACE Quality Farm and Ranch because the store's employees knew and identified her. The bills used at ACE Quality Farm and Ranch had the same serial numbers as bills used at Ampride Gas Station, linking Kerst to a third store. Additionally, regardless of whether Kerst or the police initiated the meetings, counterfeit bills were found in Kerst's possession on two separate occasions: when she met with Furrow on January 3, and when she met with Fields on January 4. The serial numbers on those bills served as additional evidence linking Kerst to the use of counterfeit money at Subway and ACE Quality Farm and Ranch. Under the totality of the circumstances, there was a "fair probability" that evidence of counterfeit money would be found in Kerst's home.

The fact that Kerst initially and repeatedly contacted the police, rather than the other way around, did not sufficiently "cast doubt" on the existence of probable cause to invalidate the search warrant. *See Sundermeyer,* 769 P.2d at 501. By her own admission, Kerst called the police only after she had returned to ACE Quality Farm and Ranch and learned that its employees, who knew her by name and account, had discovered counterfeit bills. Indeed, by the time that Kerst contacted the police, Officer Fields had independently received a complaint from ACE Quality Farm and Ranch that Kerst had used counterfeit bills to purchase items. For that reason, Kerst's decision to call the police did not eliminate the "fair probability" that counterfeit money would be found in her home. Further, the fact that she brought the police $1,300 containing only two counterfeit bills, even if true, did not sufficiently "cast doubt" on the existence of probable cause. Kerst had the opportunity to determine which bills she would bring with her for examination, and she did in fact bring two counterfeit bills to that meeting.

Under these circumstances, Kerst's decision to contact the police was not a material fact. Its omission did not make the affidavit substantially misleading as to the existence of probable cause. For that reason, the trial court erred in invalidating the affidavit and warrant and suppressing the evidence found during the search.

## III.

For the foregoing reasons, we reverse the trial court. We hold that regardless of whether the facts were omitted with a reckless disregard for the truth, the information was not material such that its omission rendered the affidavit substantially misleading as to the existence of probable cause. The warrant was valid. Thus, we hold that the trial court erred in suppressing the evidence, and we reverse and remand the case for further proceedings consistent with this opinion.