Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 5, 2018

**2018 CO 88**

**No. 18SA204, People v. Cox—Searches and Seizures—Judicial Review or Determination—Scope of Inquiry or Review, in General.**

In this interlocutory appeal, the supreme court considers whether the trial court erred in ruling that the affidavit in support of a search warrant failed to establish probable cause.  The search warrant was obtained after law enforcement officers observed what they believed was a large marijuana grow on the defendant's agricultural and residential property.  The trial court found that the affidavit was deficient because it failed to mention that the defendant was a registered industrial hemp farmer and that marijuana and industrial hemp appear and smell the same.  The supreme court concludes that the trial court erred by (1) reviewing the magistrate's probable cause determination de novo instead of according it great deference, (2) considering information not contained within the four corners of the affidavit, and (3) failing to afford the affidavit a presumption of validity.  When giving the information articulated within the four corners of the affidavit the presumption of validity to which it is entitled, the supreme court determines that the magistrate had a substantial basis to find that probable cause existed to believe that

contraband or evidence of criminal activity would be found on the defendant's property.

Therefore, the trial court's suppression order is reversed.

**2018 CO 88**

**Supreme Court Case No. 18SA204**
*Interlocutory Appeal from the District Court*
Mesa County District Court Case No. 17CR1974
Honorable Brian James Flynn, Judge

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

David Lawrence Cox.

**Order Reversed**
*en banc*
November 5, 2018

**Attorneys for Plaintiff-Appellant:**
Daniel P. Rubinstein, District Attorney, Twenty-First Judicial District
George Alan Holley II, Senior Deputy District Attorney
    *Grand Junction, Colorado*

**Attorneys for Defendant-Appellee:**
Flanders, Elsberg, Herber & Dunn, LLC
Mark A. Herber
Elizabeth A. Raba
    *Longmont, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE GABRIEL** specially concurs.

¶1     Believing there was a large marijuana grow on the agricultural and residential land owned by defendant David Cox, law enforcement officers obtained a warrant to search his home and packing shed.  After the officers executed the search warrant, Cox was charged with multiple marijuana-related offenses and child abuse.  In a pretrial motion, Cox sought to suppress all the evidence seized, arguing, among other things, that the search warrant lacked probable cause.[1]  Relying on evidence presented during the preliminary hearing, the trial court granted the motion, finding that certain conclusory statements in the affidavit regarding the presence of marijuana on Cox's property should be stricken.  More specifically, the trial court observed that the affidavit failed to mention that Cox was "a registered and regulated hemp farmer," which authorized him to possess and process industrial hemp.[2]  Further, noted the trial court, the affidavit repeatedly

---

[1] In the alternative, Cox requested a veracity hearing to test the truthfulness of the assertions set forth in the affidavit.

[2] Amendment 64 defines "industrial hemp," commonly known as "hemp," as "the plant of the genus cannabis and any part of such plant . . . with a delta-9 tetrahydrocannabinol concentration that does not exceed three-tenths percent on a dry weight basis."  Colo. Const. art. XVIII, § 16(2)(d); *see also* § 35-61-101, C.R.S. (2018) (containing a similar definition of industrial hemp).  Industrial hemp "is an agricultural commodity that belongs to the cannabis family," but has only "trace amounts" of the psychoactive component of marijuana "(delta-9 tetrahydrocannabinol or THC), typically around .03 percent," which stands in stark contrast to most marijuana strains that are sold in Colorado and "range between 8 and 30 percent THC."  Legislative Council Colo. Gen. Assembly, *2018 State Ballot Information Booklet* 6 (Sept. 11, 2018), https://perma.cc/9MYG-PXFP.  Industrial hemp's applications include "building material, food, fuel, medicine, paper, plastic substitute, rope, and textiles."  *Id.*  Amendment 64 makes clear that the definition of marijuana "does not include industrial hemp."  Colo. Const. art. XVIII, § 16(2)(f).

2

referred to "marijuana," without acknowledging that marijuana and industrial hemp can only be distinguished through chemical testing because they appear and smell the same. The trial court thus ruled that the affidavit did not establish probable cause to believe contraband or evidence of criminal activity would be found on Cox's property. This interlocutory appeal followed.[3]

¶2 We now reverse the suppression order because we conclude that the trial court erred in three ways. First, the trial court reviewed the magistrate's probable cause determination de novo instead of according it great deference. Second, the trial court failed to limit its review to the information contained within the four corners of the search warrant's accompanying affidavit. And third, the trial court did not afford the affidavit the presumption of validity to which it was entitled.

¶3 Presuming valid the information articulated within the four corners of the affidavit, we conclude that the magistrate had a substantial basis to find that probable cause existed to believe contraband or evidence of criminal activity would be located on Cox's property. The trial court therefore erred in ruling that the affidavit failed to

---

[3] The People bring this interlocutory appeal pursuant to section 16-12-102(2), C.R.S. (2018), and C.A.R. 4.1(a). We find that the People have met the threshold requirement to file an interlocutory appeal in this court from a district court's order granting a defendant's motion to suppress evidence. *See* § 16-12-102(2) (the People must certify that the appeal is not taken for purposes of delay and that the evidence is a substantial part of the proof of the charge pending against the defendant); C.A.R. 4.1(a) (same).

establish probable cause.  On remand, the trial court should address Cox's alternative request for a veracity hearing.

## I. Affidavit in Support of Search Warrant

¶4     In October 2017, Detective Mark Post, a member of the Palisade Police Department, authored the affidavit in support of the warrant used to search Cox's property.[4]  As relevant here, the affidavit provided as follows:

- Detective Post had been a peace officer for more than five years and a detective since November 2015.  On October 13, 2017, he was asked by Sergeant John Cooper to review some images of Cox's property "for a believed illegal marijuana grow."  The property consisted of agricultural and residential land, and included a house and a packing shed.  Cox owned both the house and the packing shed.

- In plain view from the roadway, in front of the residence's two-car garage, there was an area approximately twenty feet wide and thirty feet long that had marijuana drying on top of a blue tarp on the ground.  Given Detective Post's knowledge, training, and experience, it was "immediately apparent" to him that this was marijuana.  This opinion was based on the appearance of the plants observed and "the distinctive odor of raw marijuana."

- Detective Post and Sergeant Cooper drove by the area and observed large quantities of marijuana being dried in front of the property, both at "the residence and the packing shed."  The packing shed had a large overhang that also had large quantities of marijuana "hung up from the ceiling."

---

[4] There were actually two search warrants executed: one in Cox's residence and the other in his packing shed (which has a different address than the residence).  Each warrant was accompanied by an affidavit from Detective Post.  However, like the trial court and the parties, we refer to a single search warrant and a single affidavit because, save for the different addresses and property descriptions, there are no substantive differences between the warrants or between the affidavits.

- The Palisade Police Department had been contacted by multiple civilians regarding what was "believed to be the large marijuana grow occurring . . . in the shed, and possibly being processed in the shed and in the house."

- Given the large quantity of marijuana, it was "likely that the marijuana [was] being grown inside of the large packing shed." Additionally, there was "likely to be equipment related to the large production of marijuana both in the residence and in the packing shed."

- The quantity of marijuana drying in plain view was "visibly well over what would be considered personal use amounts." Based on Detective Post's training and experience, it was "reasonable to believe that this marijuana [was] being sold or bartered for illegally." "[I]mportant[ly]," Cox had "recently [been] turned down by the town of Palisade for a recreational license to grow marijuana."

## II. Motion to Suppress and Suppression Order

¶5 Cox filed a motion to suppress the evidence collected during the search of his property. The crux of the motion was that Detective Post's affidavit failed to establish probable cause. But the motion largely criticized Detective Post's attestations as being grounded in his "baseless and incorrect conclusion that marijuana cannabis was drying in plain view on Mr. Cox's property." Following a hearing, the trial court issued a written order. Based on evidence introduced during the preliminary hearing, it agreed with the motion that the affidavit contained conclusory statements regarding the presence of marijuana on Cox's property. Thus, the trial court granted Cox's motion.

## III. Analysis

¶6 Before analyzing the merits of the People's appeal, we take a short detour to review the legal principles governing challenges to search warrants. We then apply those

principles to determine whether the trial court erred in granting Cox's motion to suppress based on its finding that Detective Post's affidavit lacked probable cause.

## A. Relevant Law

¶7 The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibit unreasonable searches and seizures. *People v. Bailey*, 2018 CO 84, ¶ 18, __ P.3d __. Neither constitutional provision explains what constitutes an unreasonable search, but the United States Supreme Court has inferred from the text of the Fourth Amendment that "a warrant must generally be secured" before a police officer may conduct a search. *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). Under both constitutions, "a search warrant may only be issued upon a showing of probable cause, supported by oath or affirmation, particularly describing the place to be searched and the things to be seized." *People v. Kerst*, 181 P.3d 1167, 1171 (Colo. 2008). An affidavit submitted in support of a search warrant "must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation." *Id.* Probable cause exists when an affidavit sets forth "sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *People v. Miller*, 75 P.3d 1108, 1112 (Colo. 2003). A magistrate's probable cause determination must be based on facts contained "within the four corners of the affidavit" submitted in support of the search warrant. *People v. Gallegos*, 251 P.3d 1056, 1064 (Colo. 2011).

¶8    The affidavit accompanying the search warrant must be afforded "a presumption of validity." *Kerst*, 181 P.3d at 1171. However, we have recognized that where an affiant's good faith is at issue, either explicitly or implicitly, the defendant may mount a veracity challenge by requesting a hearing to test the accuracy of the attestations in the affidavit. *People v. Flores*, 766 P.2d 114, 118 (Colo. 1988). But before a veracity hearing may be held, the defendant's motion to suppress must satisfy two conditions: (1) it must be supported by at least one affidavit that reflects there is a "good faith basis for the challenge," and (2) it must identify with specificity the "precise statements" being challenged. *People v. Dailey*, 639 P.2d 1068, 1075 (Colo. 1982).[5]

¶9    If the trial court holds a veracity hearing, it must determine whether the affidavit contains erroneous statements and, if so, whether they are the result of "intentional falsehood or reckless disregard for the truth on the part of the officer-affiant." *Id.* In the event the trial court finds that the defendant has shown by a preponderance of the evidence intentional falsehood or reckless disregard for the truth by the affiant, it must strike the erroneous statements from the affidavit. *Id.* On the other hand, if the erroneous statements resulted from an informant's perjury or reckless disregard for the truth, or

---

[5] Both parties have referred to a "*Franks* hearing" in this proceeding. But in *Dailey*, we adopted a less rigorous threshold standard than the one announced by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). In contrast to the "good faith basis" showing we require to request a veracity hearing, under *Franks*, a veracity challenge may be made only if there is "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included . . . in the . . . affidavit." *Franks*, 438 U.S. at 155–56.

from the negligence or good faith mistake of either the affiant or an informant, the issue of appropriate sanctions is left to the sound discretion of the trial court. *Flores*, 766 P.2d at 119–20.

¶10 A magistrate's probable cause determination is generally given "great deference" and is not subject to de novo review. *People v. Hebert*, 46 P.3d 473, 481 (Colo. 2002) (quotation omitted). This deference is consistent with the preference for police to seek a judicial determination of probable cause, rather than resort to warrantless searches in the hopes of relying on one of the narrowly defined exceptions to the warrant requirement. *Id*. Consequently, a reviewing court should not attempt to put itself in the shoes of the magistrate and consider whether it would have found probable cause. *Id.* Instead, "the usual question for a reviewing court is whether the issuing magistrate had a 'substantial basis' for issuing the search warrant." *Id*. (quoting *People v. Gall*, 30 P.3d 145, 150 (Colo. 2001)); *see also Miller*, 75 P.3d at 1112 ("A reviewing court should uphold the validity of a warrant if the affidavit accompanying the warrant creates a substantial basis for the conclusion that probable cause existed."). Any doubts must be resolved in favor of the magistrate's probable cause determination. *Hebert*, 46 P.3d at 481.

## B. Application

¶11 The People contend that the trial court erred in ruling that Detective Post's affidavit did not establish probable cause to search Cox's property. For three reasons, we agree.

¶12 First, the trial court engaged in de novo review and failed to afford the magistrate's probable cause determination great deference. When a trial court is called upon to review

8

a magistrate's probable cause determination, the question is not whether the trial court would have found probable cause in the first instance, but whether the magistrate had a substantial basis for issuing the search warrant. Here, instead of evaluating whether the magistrate had a substantial basis for issuing the warrant, the trial court analyzed whether the affidavit established probable cause to search Cox's property. In other words, the trial court placed itself in the position of the magistrate and determined it would have denied law enforcement's request for a search warrant.

¶13 Second, the trial court failed to limit its review to the information contained within the four corners of the affidavit. In fact, in its order granting the motion to suppress, the trial court relied heavily on information which was extraneous to the affidavit:

- Cox is "a registered hemp grower," and he explained to the officers executing the search warrant that the plants they had viewed drying on his property were all legal hemp plants;

- the truth of Cox's statements to law enforcement was later confirmed by chemical testing;

- despite Cox's attempt to correct the officers' mistaken assumptions, law enforcement confiscated and destroyed some of the hemp, but left behind almost 10,000 pounds of what Detective Post had conclusively described as marijuana in the affidavit;

- although marijuana and hemp appear and smell the same, they are different;

- there was no basis to believe that Cox was not in compliance with any law or regulation concerning the possession or processing of hemp;

- the opinion in the affidavit that there was marijuana on Cox's property was conclusory and was contradicted by Detective Post's testimony at the preliminary hearing, which indicated that hemp and marijuana can only be distinguished by chemical testing;

9

- there was testimony at the preliminary hearing that law enforcement could have learned, either through a direct inquiry to the Department of Agriculture or through a Google search, that Cox was in fact a registered and regulated hemp farmer;

- the plants observed on Cox's property were being dried in a manner consistent with how hemp is dried; and

- the manner in which the plants were being dried and the "open and obvious" fashion of such drying were "distinct facts" supporting the conclusion that "it was more likely the plants viewed were hemp [ ] being legally processed."

¶14    Notably, during the hearing on the motion to suppress, the trial court asked defense counsel if it could consider evidence from the preliminary hearing, and counsel answered in the negative, explaining that the probable cause determination has to be limited to the four corners of the affidavit.  The trial court agreed, acknowledging that the law in Colorado requires a four-corners review when a magistrate's probable cause determination is challenged.  It then keenly added that evidence outside the four corners of the affidavit may be appropriately considered in a veracity hearing.  At that point, the trial court realized it was "probably putting the cart before the horse in getting into th[at] issue."  But its subsequent order granting the motion to suppress did precisely that — it placed the cart before the horse by including within its four-corners review information that was not contained in the affidavit.[6]

---

[6] Cox's motion to suppress suffers from the same deficiency and may have inadvertently led the trial court down the primrose path to error.

10

¶15    Third, the trial court did not give the affidavit the presumption of validity to which it was entitled. Instead, it disregarded parts of the affidavit as conclusory based on the omission of certain information presented at the preliminary hearing. The trial court implied that the affidavit was misleading because it repeatedly referred to "marijuana" without ever acknowledging that Cox was "a registered hemp grower" and that what the officers had observed on his property could have been hemp. According to the trial court, the affidavit "should have included facts explaining why the plants [seized] . . . were actually more likely to be illegal marijuana, instead of hemp."

¶16    While the trial court's observations could potentially be relevant to a veracity challenge, they are of no import to a four-corners review of the magistrate's probable cause finding. It was improper for the trial court to refute the validity of the assertions in the affidavit with extraneous information. During its four-corners review, the trial court was limited to Detective Post's sworn statements and was required to presume those attestations valid.

¶17    When we afford the magistrate's probable cause determination the great deference it deserves and Detective Post's affidavit the presumption of validity to which it is entitled, we conclude that the information within the four corners of the affidavit provided the magistrate a substantial basis to issue the search warrant. The affidavit did not mention "industrial hemp" or "hemp." It referred only to "marijuana," and Colorado law expressly provides that the term "marijuana" does not include industrial hemp. Colo. Const. art. XVIII, § 16(2)(f). It explained that the plants on Cox's property looked like marijuana and had "the distinctive odor of raw marijuana." It described a "large

11

marijuana grow" and possibly large amounts of marijuana "being processed in the shed and in the house." It indicated that the quantity of marijuana was "visibly well over what would be considered personal use amounts" and had prompted multiple civilians to contact the Palisade Police Department about what was "believed to be [a] large marijuana grow." It noted that Cox's application to grow marijuana had recently been denied. And it contained an opinion, based on Detective Post's training and experience, that it was "reasonable to believe" that the marijuana on Cox's property was "being sold or bartered for illegally." In our view, these averments provided the magistrate a substantial basis to find that probable cause existed to believe that contraband or evidence of criminal activity would be located on Cox's property.

## IV. Conclusion

¶18 Presuming valid the information articulated within the four corners of Detective Post's affidavit, we conclude that the magistrate had a substantial basis to find that probable cause existed to believe contraband or evidence of criminal activity would be located on Cox's property. The trial court thus erred in ruling that the affidavit failed to establish probable cause. Accordingly, we reverse the trial court's suppression order. On remand, the trial court should address Cox's alternative request for a veracity hearing.

**JUSTICE GABRIEL** specially concurs.

12

JUSTICE GABRIEL, concurring specially.

¶19 With some hesitancy, I agree with the majority's conclusion that, under the prevailing standards governing magistrates' probable cause determinations, the magistrate here had a substantial basis to find that probable cause existed to believe that contraband or evidence of criminal activity would be located on defendant David Cox's property. I write separately, however, because I share the concerns that appear to have motivated the trial court's suppression order in this case.

¶20 In his search warrant affidavit, Detective Post repeatedly expressed the belief that a large, illegal marijuana grow operation was being conducted on Cox's property. Detective Post based this belief on his training, knowledge, and experience, as well as on the plants' appearance and distinctive odor. He did not explain, however, how he knew that he was observing an illegal marijuana grow, as opposed to a legal industrial hemp operation. This is particularly concerning given that (1) the record in this case indicates that marijuana and hemp appear and smell identical and (2) when Detective Post and other officers proceeded to execute the search warrant, they left behind approximately 10,000 pounds of the cannabis referenced in the affidavit "because there was a concern it was hemp" and Detective Post knew that it is not illegal to dry or transport industrial hemp.

¶21 Contrary to Cox's suggestion, I do not believe that, in a case like this, an officer must conduct chemical testing before submitting a probable cause affidavit averring the officer's belief that an illegal marijuana grow, as opposed to a legal industrial hemp operation, was being conducted on property to be searched. Because it is lawful to

1

possess and process industrial hemp and because the record in this case indicates that marijuana and hemp appear and smell identical, however, I believe that an officer must aver more than just a belief that "marijuana" is present on site. Absent such factual assertions, an officer could obtain a search warrant for any legal industrial hemp operation merely by asserting the word "marijuana" in a probable cause affidavit. In my view, such an affidavit would amount to a "bare bones" affidavit that would be insufficient to establish probable cause. *See People v. Pacheco*, 175 P.3d 91, 96 (Colo. 2006) (noting that an affidavit is termed "bare bones" if it contains only conclusory statements devoid of facts that would allow a magistrate to make an independent determination of probable cause).

¶22 Although I perceive the issue as close, I cannot say that the facts contained within the four corners of the affidavit here were insufficient to support the magistrate's probable cause determination. Nonetheless, the better practice would have been for Detective Post to explain in more detail why he believed the plants at issue were marijuana and not industrial hemp.

¶23 For these reasons, I respectfully concur in the majority opinion.