Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 22, 2020

**2020 CO 60**

**Nos. 20SA126, 20SA127, *People v. Gutierrez* and *People v. Carrillo-Toledo*—Suppression of Evidence—Statutory Interpretation—Traffic Violation—Fourth Amendment.**

The supreme court holds that section 42-4-903(4), C.R.S. (2019), requires a driver to activate his or her vehicle's turn signal before moving left or right to change lanes. Accordingly, when an officer observes a driver activate the turn signal once his or her vehicle's tires are already partially over the dashed line between lanes, that officer may reasonably conclude that he or she has witnessed a traffic violation and may lawfully stop the vehicle. Thus here, the trial court erred when it concluded that the initial traffic stop was unlawful and suppressed evidence of criminality found during a search of the vehicle as stemming from that unlawful stop. The supreme court therefore reverses the trial court's order and remands the case for further proceedings.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 60

**Supreme Court Case No. 20SA126**

*Interlocutory Appeal from the District Court*

Mesa County District Court Case No. 19CR481

Honorable Richard T. Gurley, Judge

### Plaintiff–Appellant:

The People of the State of Colorado,

v.

### Defendant–Appellee:

Aldo Gabriel Gutierrez.

### Order Reversed

*en banc*

**\* \* \* \* \***

**Supreme Court Case No. 20SA127**

*Interlocutory Appeal from the District Court*

Mesa County District Court Case No. 19CR480

Honorable Richard T. Gurley, Judge

### Plaintiff–Appellant:

The People of the State of Colorado,

v.

### Defendant–Appellee:

Julio Cesar Carrillo-Toledo.

### Order Reversed

*en banc*

June 22, 2020

**Attorneys for Plaintiff–Appellant:**
Daniel Rubenstein, District Attorney, Twenty-First Judicial District
Kraig R. Hamit, Senior Trial Deputy District Attorney
    *Grand Junction, Colorado*

**Attorneys for Defendant–Appellee Aldo Gabriel Gutierrez**:
Peters & Nolan, LLC
Andrew J. Nolan
    *Grand Junction, Colorado*

**Attorneys for Defendant–Appellee Julio Cesar Carrillo-Toledo**:
Stephen L. Laiche, P.C.
Stephen L. Laiche
    *Grand Junction, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 This is an interlocutory appeal from the trial court's order granting defendants' joint motion to suppress several pounds of heroin seized during a search of defendants' truck. We reverse the trial court's order and remand the case for further proceedings.

## I. Facts and Procedural History

¶2 Aldo Gabriel Gutierrez was driving a pickup truck, in which Julio Cesar Carrillo-Toledo was a passenger, on I-70 in Mesa County.[1]

¶3 Colorado State Patrol Trooper Christian Bollen, who has extensive training in drug interdiction, noticed the truck. He testified that he took an interest in it because computer databases informed him that the truck was a rental, registered out of Nevada, that had recently been spotted in Amarillo, Texas.

¶4 After following the truck for several miles, Trooper Bollen observed what he believed were two lane-change violations. He later testified, regarding the first lane change, that the pick-up truck's tires were on top of the center dividing line and partially in the next lane when Gutierrez activated the turn signal. Regarding

---

[1] We gleaned the facts set forth in this section from the trial court's written findings in its suppression order and the seemingly undisputed testimony regarding the circumstances surrounding the stop at issue.

3

the second lane change, Trooper Bollen testified that the tires were on top of the center dividing line when Gutierrez activated the turn signal.

¶5 Trooper Bollen pulled the truck over. He asked Gutierrez to step out of the truck and, with Gutierrez's consent, patted him down for weapons. He then ran the truck's and both men's information through a computer-aided-dispatch system and asked Gutierrez about his travel plans. He testified that Gutierrez's demeanor and speech changed in response to these questions and that Gutierrez became very nervous. Trooper Bollen said that Gutierrez's answers to his questions raised his suspicion that the two men might be transporting illegal drugs. He then asked Gutierrez if he could search the truck, and Gutierrez gave his consent. Trooper Bollen discovered three to five pounds of heroin in the tailgate of the truck.

¶6 Both Gutierrez and Carrillo-Toledo were arrested and charged with possession with intent to distribute a controlled substance. Before trial, Gutierrez and Carrillo-Toledo filed a joint motion to suppress the evidence discovered in the

truck.[2]  They alleged that Trooper Bollen violated their Fourth Amendment rights by stopping them without reasonable suspicion of a traffic violation.

¶7     After a hearing, the trial court granted the motion to suppress.  It concluded that Gutierrez had not violated the relevant traffic statute and that Trooper Bollen's belief to the contrary was not objectively reasonable.  (Based on this conclusion, the trial court did not address any of defense counsel's alternative arguments.)  The prosecution now appeals that order.

## II.  Analysis

¶8     We initially address defense counsel's contention that the appeal is not timely and should be dismissed.  Concluding that the appeal was timely filed, we then turn to the merits of the appeal.  After briefly describing the relevant standards of review, we examine the plain language of section 42-4-903, C.R.S. (2019), the traffic statute Gutierrez allegedly violated.  We hold that the statute's plain language requires a driver to signal before changing lanes.

---

[2] We note that under *Brendlin v. California*, 551 U.S. 249, 251 (2007), when a police officer makes a traffic stop, both the driver and any passengers are considered to be seized for Fourth Amendment purposes and anyone in the stopped vehicle may challenge the constitutionality of the stop.

## A. Timeliness

¶9    This interlocutory appeal was filed pursuant to C.A.R. 4.1, which requires that certain interlocutory appeals of suppression orders in criminal cases be heard by this court.  Appeals under this rule "must be filed within 14 days after the entry of the order complained of."  C.A.R. 4.1(b).

¶10    The suppression order was issued on March 26, and the appeal was filed on April 9, the last day of the fourteen-day period.  The appeal, however, was filed with the court of appeals rather than this court.  The court of appeals transferred it, and thus it was filed with the supreme court on April 16.  Although April 16 is beyond the fourteen-day deadline, the filing is nonetheless timely because, under section 13-4-110(3), C.R.S. (2019), "[n]o case filed either in the supreme court or the court of appeals shall be dismissed for having been filed in the wrong court but shall be transferred and considered properly filed in the court which the supreme court determines has jurisdiction."  *See People v. Greathouse*, 742 P.2d 334, 336–37 (Colo. 1987) (concluding that the appeal, which was filed within the statutory deadline, was timely even though it was erroneously filed with the court of appeals rather than the supreme court).  Thus, we proceed to consider the merits of this appeal.

## B. Suppression of Evidence

¶11 Review of a trial court's order granting a motion to suppress evidence presents a mixed question of fact and law. *People v. Berdahl*, 2019 CO 29, ¶ 18, 440 P.3d 437, 442. And where "the controlling facts are undisputed . . . the legal effect of those facts constitutes a question of law." *Turbyne v. People,* 151 P.3d 563, 572 (Colo. 2007).

¶12 Review of the trial court's suppression order requires us to review the court's interpretation of section 42-4-903. Statutory interpretation presents a question of law that we review de novo. *People v. Null*, 233 P.3d 670, 679 (Colo. 2010). In interpreting statutes, our primary goal is to give effect to the legislature's intent. *Id.* We do so by first considering the plain language of the statute, reading the statute as a whole and giving words and phrases their ordinary meaning. *People v. Burnett*, 2019 CO 2, ¶ 20, 432 P.3d 617, 622. If the statute is clear and unambiguous, we apply it as written. *People v. Huckabay*, 2020 CO 42, ¶ 13, __ P.3d __.

¶13 The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures by law enforcement. U.S. Const. amend. IV; *see also* Colo. Const. art. II, § 7. When an individual is subjected to a constitutionally unreasonable search, any evidence seized during that search

may be suppressed, absent certain exceptions not relevant here. *See People v. Morley*, 4 P.3d 1078, 1080 (Colo. 2000).

¶14 In Colorado, traffic stops typically constitute investigatory stops that implicate this Fourth Amendment protection. *People v. Chavez-Barragan*, 2016 CO 66, ¶ 19, 379 P.3d 330, 335. An officer may conduct an investigatory stop without violating the Fourth Amendment "when there are specific, articulable facts that give rise to an officer's reasonable suspicion of criminal activity . . . i.e., an objectively reasonable basis to believe that a driver has committed a traffic offense." *People v. Vaughn*, 2014 CO 71, ¶ 11, 334 P.3d 226, 229 (citation omitted). As long as the officer has an objectively reasonable basis for the stop, the officer's subjective motives are irrelevant. *Id.*

¶15 Trooper Bollen testified at the suppression hearing that he had observed Gutierrez commit two lane-change violations. Section 42-4-903 governs a driver's turning movements and use of signals. Subsection (4) specifically governs lane changes; it provides that turn signal indicator lights "shall be used to indicate an intention to turn, change lanes, or start from a parked position." § 42-4-903(4).

¶16 In resolving the suppression motion, the trial court interpreted this statutory subsection. It concluded that

> section 42-4-903(4) does not require a driver to activate the turn signal before the vehicle's tires touch the dividing line. It simply states that the turn signal must be used "to indicate an intention to . . . change

8

lanes." The Court finds that Gutierrez complied with section 42-4-903(4) by signaling his intent to change lanes just as he began to complete the lane changes.

We disagree with the trial court's legal conclusion that Gutierrez complied with the statute.

¶17 As a preliminary matter, we address the parties' arguments regarding whether the dashed line dividing the lanes is part of the lane the driver is in or part of the lane he is moving into. Section 42-1-102(46), C.R.S. (2019), defines a lane as "the portion of a roadway for the movement of a single line of vehicles." Regardless of whether this definition includes the dividing line, Trooper Bollen testified that, at least as to Gutierrez's first lane change, the tires were "already on top of the lane line and partially into the other lane" when the trooper saw the turn signal activate. Therefore, Gutierrez changed lanes at least once before signaling his intention to do so.

¶18 Section 42-4-903(4) requires a driver to signal his "intention to" change lanes. The statute contains no definition of "intention," and we see no reason to give that phrase any meaning other than its common one. The dictionary definition of "intention" is "a determination to act in a certain way." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*intention*; [https://perma.cc/NBM4-ZU86]; *see also* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*intends*;

9

[https://perma.cc/4B6V-5H6J] (defining "intends" as "to have in mind as a purpose or goal: PLAN" and "to design for a specified use or future"). Thus, "intention to" connotes a sequence of action: The driver must signal to show that he plans to change lanes. In short, the signal must precede any movement between lanes. *See Burnett*, ¶ 29, 432 P.3d at 624 ("The statute only requires that a driver use a signal *before* changing lanes." (emphasis added)).

¶19 Further, reading the statute as a whole, we note that subsection (1) provides that "[n]o person shall . . . move right or left upon a roadway unless and until such movement can be made with reasonable safety and then *only after* giving an appropriate signal . . . ." § 42-4-903(1) (emphasis added). The phrase "only after" unambiguously provides for the same sequence of action: A driver must first signal and then begin moving right or left to change lanes.

¶20 Put simply, the plain language of section 42-4-903 does not permit a driver to simultaneously signal and move into another lane.

¶21 Here, Trooper Bollen testified that he observed the truck's tires partially over the center dashed line separating the lanes at least once before Gutierrez activated his signal. In its order, the trial court did not question Trooper Bollen's credibility about the facts, nor did it challenge the accuracy or reliability of the dashcam photographs allegedly depicting the same. As an appellate court we don't engage in fact finding, nor do we make credibility determinations. Because

10

those historical facts are supported by the record, we defer to them. *See People v. Minjarez*, 81 P.3d 348, 353 (Colo. 2003) ("[W]e will defer to a trial court's findings of historical fact and credibility findings so long as they are supported by competent evidence in the record."). Thus, based on our interpretation of the plain language of section 42-4-903 and the factual record, we conclude that the traffic stop was based on Trooper Bollen's reasonable suspicion that a traffic violation had occurred. Accordingly, the trial court erred by concluding otherwise.[3]

## III. Conclusion

¶22 We reverse the trial court's order and remand the case to the trial court for further proceedings. On remand, we direct the trial court to consider any issues that the parties raised in their suppression briefing that remain unresolved.

---

[3] Based on our conclusion, we need not address the prosecution's alternative argument that Trooper Bollen's alleged mistake of law was objectively reasonable. *See Heien v. North Carolina*, 574 U.S. 54, 66 (2014).