513 P.3d 347
The PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.Scott K. MCKAY, Defendant-Appellee.
Supreme Court Case No. 21SA238 Supreme Court of Colorado.
October 25, 2021
Attorneys for Plaintiff-Appellant: Beth McCann, District Attorney, Second Judicial District, Richard F. Lee, Deputy District Attorney, Denver, Colorado
Attorneys for Defendant-Appellee: Kardon Law, Inc., Nancy Kardon, Boulder, Colorado
En Banc
JUSTICE HOOD delivered the Opinion of the Court.
¶1 This is an interlocutory appeal from the trial court's order granting defendant Scott McKay's motion to suppress evidence gathered during the execution of a search warrant. We reverse the trial court's order and remand the case for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶2 Pursuant to a warrant, Denver police officers searched McKay's home and car. During the search, police allegedly found more than four pounds of methamphetamine and a handgun. The People charged McKay with possession of methamphetamine with intent to distribute and possession of a weapon by a previous offender.
¶3 McKay moved to suppress the evidence found during the search. The trial court concluded that the issuing magistrate's probable cause determination lacked a substantial basis, and it granted McKay's motion. The People appealed directly to us pursuant to C.A.R. 4.1(a) and section 16-12-102(2), C.R.S. (2021).
II. Analysis
A. Standard of Review ¶4 Review of a trial court's suppression order presents a mixed question of fact and law. People v. Gutierrez, 2020 CO 60, ¶ 11, 465 P.3d 577, 580-81. While "[w]e defer to the trial court's factual findings that are supported by competent evidence," we review the legal effect of those facts de novo. People v. Munoz-Gutierrez, 2015 CO 9, ¶ 14, 342 P.3d 439, 443.
B. Probable Cause
¶5 Both the United States and the Colorado constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV ; Colo. Const. art. II, § 7. To protect this right, "a search warrant may only be issued upon a showing of probable cause, supported by oath or affirmation, particularly describing the place to be searched and the things to be seized." People v. Cox, 2018 CO 88, ¶ 7, 429 P.3d 75, 78 (" Cox II" ) (quoting People v. Kerst, 181 P.3d 1167, 1171 (Colo. 2008) ). ¶6 To establish probable cause, an affidavit must contain "sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." Id. at ¶ 7, 429 P.3d at 79 (quoting People v. Miller, 75 P.3d 1108, 1112 (Colo. 2003) ). ¶7 Probable cause is a commonsense concept that requires a court to consider the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (abandoning the rigid, two-pronged Aguilar-Spinelli test in favor of the totality of the circumstances approach). That is, to determine the sufficiency of a search warrant affidavit, courts must consider the facts of the case in combination, not in isolation. People v. Cox, 2017 CO 8, ¶ 14, 401 P.3d 509, 512 (" Cox I "). ¶8 And when presented with a search warrant affidavit, a magistrate must evaluate whether "the facts contained within the four corners of the affidavit and the reasonable inferences that may be drawn from those facts" are sufficient to support probable cause and the issuance of a warrant. People v. Gutierrez , 222 P.3d 925, 937 (Colo. 2009) ; see also 2 Wayne R. LaFave et al., Criminal Procedure § 3.3(a) n.29 (4th ed. 2020) (explaining that it is proper for an issuing magistrate to draw reasonable inferences from the facts of an affidavit). ¶9 An affidavit need not describe all steps taken, information obtained, and statements made during an investigation but must contain any material adverse facts. Kerst, 181 P.3d at 1171. An adverse fact is material in this context only if its omission would render the affidavit "substantially misleading as to the existence of probable cause." Id. Thus, although information omitted from an affidavit may be adverse and material, "its omission does not rise to the level of misrepresentation if it does not cast doubt on the existence of probable cause." Id. ¶10 If the probable cause determination is challenged, the central question for the reviewing court is not whether it would have found probable cause in the first place, but "whether the magistrate had a substantial basis for issuing the search warrant." Cox II, ¶ 12, 429 P.3d at 80 ; see also Gates, 462 U.S. at 236, 103 S.Ct. 2317. A reviewing court must give the issuing magistrate's probable cause determination great deference and resolve any doubts in its favor. Cox II, ¶ 10, 429 P.3d at 79 ; see also Gates, 462 U.S. at 236, 103 S.Ct. 2317. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." Gates, 462 U.S. at 236, 103 S.Ct. 2317 ; see also People v. Leftwich, 869 P.2d 1260, 1266 (Colo. 1994) (explaining that de novo review falls short of the great deference to which an issuing magistrate's probable cause determination is entitled). Rather, a reviewing court should presume the affidavit is valid and confine its sufficiency review to the four corners of the affidavit. See Cox II, ¶¶ 13-15, 429 P.3d at 80.
C. Application
¶11 The search warrant affidavit here contained the following information:
• the affiant is a Denver police detective with extensive experience investigating narcotics offenses;
• a first-time confidential informant ("CI") told the police that McKay had recently sold the CI methamphetamine and that McKay was distributing methamphetamine from his home and other locations;
• the affiant verified some of the CI's assertions about McKay; namely, McKay's identity, address, and vehicles;
• McKay had been arrested for possession of a controlled substance in Colorado and elsewhere;
• the affiant used the CI to conduct two controlled purchases of methamphetamine from McKay; for the first transaction, McKay drove his car to meet the CI at an agreed-upon location; for the second, the CI went to McKay's home;
• each controlled purchase involved the following sequence of events: (1) before the buy, police searched the CI for drugs and money to verify that he had neither; (2) the police gave the CI money to purchase suspected methamphetamine from McKay; (3) law enforcement surveilled the transaction between the CI and McKay; (4) after the buy, the CI gave the methamphetamine purchased from McKay to the police, who again searched the CI to verify that he had no money or other drugs; and (5) a lab confirmed that the purchased substance was, in fact, methamphetamine. ¶12 At the outset of its suppression order, the court noted several legal principles circumscribing its review. It correctly defined the probable cause standard: "[P]robable cause exists when [an] affidavit sets forth sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." The court observed that a reviewing court affords a presumption of validity to a search warrant affidavit and gives the issuing magistrate's determination great deference, specifically stating, "I realize this is not a de novo review .... I am not going to attempt to put myself in the magistrate's shoes, but the question ... for a reviewing court is whether the issuing magistrate had a substantial basis for issuing the warrant."
¶13 Despite accurately reciting the controlling legal principles, the trial court strayed in applying the law.
¶14 In its suppression order, the trial court concluded that two interrelated problems invalidated the search warrant: (1) assuming the CI drove a car to the buys, the affidavit didn't state the car had been searched for drugs and money, which cast doubt on the integrity of the controlled buys; and (2) without more pristine controlled buys, the court deemed the CI unreliable.
¶15 In reaching these conclusions, the trial court did not give the affidavit the presumption of validity to which it was entitled. Instead of focusing its review on the four corners of the affidavit, the court speculated about possible omissions. The affidavit didn't state whether the CI drove a car to complete either of the controlled buys, but the trial court inferred that the CI drove to both because, in describing the second buy, the affiant said that the CI was "followed to the residence." (Emphasis added.) Then, based on that first adverse inference, the court made a second: The CI's car was not searched before and after the controlled buys. The court deemed the failure to search the CI's car a "fundamental flaw," stating:
[F]rankly, the reviewing magistrate simply missed the fact that ... the car was never searched. And based on that, the issuing magistrate did not have a substantial basis for issuing the search warrant.
... And so on the four corners of the affidavit, I'll find that it lacks probable cause ....
¶16 But even if there was a car and the car was not searched, the magistrate's determination still had a substantial basis. On this point, a recent—and strikingly similar—case from the Utah Supreme Court, State v. Rowan, 416 P.3d 566 (Utah 2017), is instructive. In Rowan, a CI told a police officer he had bought marijuana from the defendant, and the CI agreed to use the CI's car to conduct a controlled buy. Id. at 569. After the buy, the officer submitted an affidavit to establish probable cause for a warrant to search the defendant's home, and a magistrate issued the warrant. Id. During the search, the police found drugs, firearms, and a large amount of cash. Id. The trial court concluded, however, that there was no substantial basis for the issuing magistrate's probable cause determination. Id. at 568. The trial court observed that the buy was not controlled because the police had failed to search the CI's car before and after the buy, and therefore, the buy "had failed to corroborate the CI's information." Id. at 571.
¶17 The Utah Supreme Court reversed because "[t]he totality of the circumstances, as presented in the affidavit, was sufficient to give rise to probable cause." Id. at 572. It explained that, "[e]ven if under best practices the police should have searched the car before and after the controlled buy, this does not negate the magistrate's finding of probable cause." Id. And although not perfectly executed, the buy was still sufficiently controlled.1 Furthermore, the court held that the district court failed to afford the magistrate's probable cause determination great deference and reviewed the affidavit "in a hypertechnical, rather than commonsense, manner." Id. at 571 ; see Gates, 462 U.S. at 236, 103 S.Ct. 2317. Finally, the court concluded that the affidavit's contents —the description of the information the CI reported and the results of the controlled buy — provided the magistrate a substantial basis to determine that probable cause existed for the issuance of the search warrant. Rowan, 416 P.3d at 572.
¶18 The buys here are similar to the buy deemed sufficiently controlled in Rowan: (1) before the buys, police searched the CI for drugs and money to verify that he had neither; (2) the police gave the CI a specific amount of money to purchase suspected methamphetamine from McKay; (3) law enforcement surveilled the transaction between the CI and McKay; (4) after the buys, the CI gave the suspected methamphetamine purchased from McKay to the police, who again searched the CI to verify that he had no money or other drugs; and (5) a lab confirmed that the purchased substance was in fact methamphetamine. Like the Rowan court, we conclude that the issuing magistrate's finding of probable cause remains valid despite any speculative, adverse inferences that could be drawn regarding what the CI might have hidden in his car, even assuming he drove one for the buys.
¶19 Moreover, rather than drawing adverse inferences about possible omissions by the affiant, the trial court here should have credited the issuing magistrate with reasonable inferences based on the facts within the four corners of the affidavit. The affiant stated that he was an experienced narcotics investigator conducting two seemingly routine controlled buys. He also stated that he searched the CI before and after the buys. We have said that "[d]ue consideration should be given to a law enforcement officer's experience and training" in evaluating the facts set forth in an affidavit. Kerst, 181 P.3d at 1172. The issuing magistrate could have drawn the commonsense inference that this experienced narcotics investigator engaged in reasonable due diligence by properly searching the CI to confirm that he did not have access to any other drugs or money during the buys. See LaFave, supra, at § 3.3(a) n.29.
¶20 Reviewed with appropriate deference to the issuing magistrate's determination, the two buys in this case corroborated the CI's initial allegations and statements as reported in the search warrant affidavit.2 See People v. Randolph, 4 P.3d 477, 482 (Colo. 2000) (explaining that even if a CI's statements alone do not rise to the level of probable cause, additional investigation by police to corroborate a CI's statements may create probable cause).
¶21 Therefore, we conclude that the magistrate had a substantial basis to find probable cause existed. Put simply, a fair probability existed that a search of McKay's car and home would reveal contraband or evidence of a crime.
III. Conclusion
¶22 The trial court erred in suppressing the evidence found during the search. We reverse and remand for further proceedings consistent with this opinion.3 1 The court noted the procedures that the police used to sufficiently control the buy:
[T]he police searched the CI before the buy; they supervised the CI's call to [the defendant]; the CI arranged to purchase a specific amount of marijuana for a specific amount of money at [the defendant's] residence; the police gave the CI the agreed upon amount of money; the CI drove his own car to [the defendant's] residence, but police followed him, maintaining "visual sight at all times"; the CI entered [the defendant's] residence and was shortly seen leaving [the defendant's] residence; the police again followed the CI as he drove his own car; the CI drove to a prearranged location to meet with the affiant officer; the CI had the agreed-upon distributable amount of marijuana in his possession; and the police again searched the CI, finding no additional illegal items.
Rowan, 416 P.3d at 572.
2 Our analysis eliminates the need to address the trial court's alternative reasoning regarding the CI's credibility absent the controlled buys.
3 This decision does not preclude McKay from requesting a veracity hearing to test the accuracy of the attestations in the affidavit. See People v. Dailey, 639 P.2d 1068, 1074-75 (Colo. 1982). Because the issue is not before us, we otherwise take no position on the need for, or propriety of, such a hearing.